**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 96-20646

SOPHARS KEAM,

PLAINTIFF-APPELLANT,

VERSUS

PROVIDENT LIFE AND ACCIDENT INS. CO.,

DEFENDANT APPELLEE.

Appeal from the United States District Court
For the Southern District of Texas

(CA-H-95-1550)

March 12, 1997

Before JONES, STEWART, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Pro se appellant, Sophars Keam ("Keam"), is a naturalized American citizen of Cambodian descent. Keam alleges that he was terminated from his job as a data entry clerk for appellee, Provident Life and Accident Ins. Co. ("Provident"), because of his race, Asian, in violation of Title VII of the Civil Rights Act of 1964. The district court granted summary judgment in favor of

---

[*] Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

Provident finding that no issues of material fact existed as to Keam's Title VII claim. Keam appeals asserting that he was denied discovery concerning various matters and that he established a *prima facie* case as to merits of his Title VII claim. We affirm.

BACKGROUND

Provident initially hired Keam on August 19, 1991, as a part-time mail clerk in its Houston claims office. Keam was eventually promoted to the position of preclaim data entry clerk, but his status remained part-time. Keam received five weeks of training in data entry as part of his promotion. Keam's primary job responsibility as a preclaim data entry clerk was to input data from medical claim forms into Provident's computer system. Performance for preclaim data entry clerks was measured in terms of the number of claims processed per hour ("production") and the accuracy of the information inputted ("accuracy"). The production requirement for preclaim data entry clerks was 35 claims per hour of which Keam was well aware. Keam's accuracy always met or exceeded required levels, and accordingly is not at issue in this case.

Keam completed his training for preclaim data entry on June 26, 1992 and began his duties as a preclaim data entry clerk in July of 1992. From July to September 1992, Keam failed to meet the preclaim production requirement of 35 claims processed per hour. Keam averaged 25.79 claims per hour in July, 24.10 claims per hour

in August, 25.68 claims per hour in September, and 27.55 claims in October  Because of this lack of productivity, Keam received a verbal warning on October 30, 1992, from his immediate supervisor, Machael Gossett ("Gossett").  In November and December 1992, Keam's performance improved and he satisfied the production requirement.

The next month, however, Provident introduced a new claims inputting procedure called rapid data entry ("RDE") which would eliminate the preclaim data function for most accounts thereby eliminating Keam's position.  Preclaim data entry clerks, however, were eligible for consideration as RDE clerks.  Provident provided all preclaim data entry clerks including Keam with nine weeks of training on RDE claims processing.  The productivity goals for RDE claims processing began after training at 15 claims per hour.  The goal progressively increased by 4 claims per hour each week until ultimately reaching 30 claims per hour.

Keam never met any of the weekly goals.  Consequently, Keam received a verbal warning from Gossett on May 6, 1993.  This time, however, Keam's production did not improve following the verbal warning.  On June 24 and 25, 1993, Gossett met with Keam to determine why his performance had not improved.  At the meeting, Keam gave several unsubstantiated reasons for his substandard productivity including co-workers "froze" his computer, threatened him if he performed well, and hit his chair.  Gossett investigated Keam's allegations, but found them meritless.  Thereafter, Gossett issued Keam a Letter of Warning instructing Keam to use his time

more efficiently and that if he failed to do so he would be subject to further disciplinary action. Additionally, Gossett arranged for additional training for Keam. The additional training apparently did not help Keam; he failed to meet production goals for the next three months and as a result was placed on probation on November 15, 1993. In a memorandum from Gossett to Keam informing Keam of his probationary status, Keam was warned that failure to improve his production could result in termination.

Keam's performance never improved and on January 13, 1994 he was terminated from his position as an RDE clerk. Keam, however, was offered his old position as a mail clerk at the same salary he was currently making in lieu of termination. Keam rejected the offer.

On January 18, 1994, Keam filed a charge of discrimination with the EEOC alleging that he had been terminated because of his race. On March 30, 1995, the EEOC issued a no cause determination finding that all clerks received the same training and that there was no evidence indicating that race was a factor in Keam's termination. Keam subsequently filed this suit.

During the course of litigation, Keam filed numerous discovery requests and motions. Keam initially served 27 interrogatories and 16 requests for production of documents.[1] Subsequently, Keam filed

---

[1]Local Rule 5.D. of the Southern District of Texas provides that no more than 25 interrogatories may be served without leave of court.

motions to (1) serve additional interrogatories and request for production of documents; (2) compel the production of documents; (3) compel answers to interrogatories. The district court granted in part Keam's motion to compel answers to interrogatories and required Provident to provide job descriptions and wage scales in response to interrogatory numbers 10 and 13. The district court denied Keam's motion to compel the production of documents that Provident no longer possessed[2], but required that Provident supplement request number 14 which was for payment records for preclaim data entry and RDE clerks from January 1, 1993, to January 1, 1994. Keam's motion to serve more interrogatories and requests for production of documents was denied.

Both Keam and Provident filed motions for summary judgment. Provident's motion was granted. The lower court concluded that Keam failed to establish a prima facie case under Title VII for racial discrimination because he did not adduce any evidence regarding whether he was treated differently from other data entry clerks. The district court also found that Provident articulated a legitimate, nondiscriminatory reason for its action, Keam's lack of productivity.

### STANDARD OF REVIEW

As to the merits of Keam's claim, we review appeals from summary judgment *de novo*. *Garcia v. Elf Atochem North America,* 28

---

[2]Provident no longer possessed these documents because it sold this division of the company.

F.3d 446, 449 (5th Cir. 1994). Discovery matters are reviewed for abuse of discretion. *Coughlin v. Lee*, 946 F.2d 1152, 1158 (5th Cir. 1991). Briefs filed by pro se litigants are liberally construed by this court. *Douglass v. United Services Auto. Ass'n*, 65 F.3d 452, 455 (5th Cir. 1995).

ANALYSIS

A. Discovery

Keam specifically contends that the district court erred in denying his motions to compel Interrogatories numbered 10 and 13 and Requests for Production of Documents numbered 8-15. Keam also asserts that, in general, he was denied sufficient discovery. Interrogatories 10 and 13 requested that Provident provide job classifications and salaries for **all** Provident employees who worked in the BFI group.[3] The district court granted this motion in part, ordering Provident to provide job descriptions and wage information for Document Control Clerks, RDE Clerks, and Preclaim Data Entry Clerks only.

The documents requested by Keam include: copies of time and productivity records for everyone on the BFI team; copies of employee evaluations for everyone on the BFI Team; and payment and employment histories of selected employees. Except for the wage records of other data entry clerks, these requests were denied

---

[3]Keam worked for the "BFI Group." This means that Keam processed BFI claims. BFI was Provident's largest client.

either because Provident no longer had control over these documents or it was unduly burdensome to produce the documents.

Keam does not establish that the district court abused its discretion in denying any of his discovery requests.  Provident produced all information in its possession concerning Keam and all other persons similarly situated.  Information about non data entry employees was properly denied because these employees were not similarly situated and their pay and performance records were not relevant.  Moreover, Keam was not harmed by being denied discovery to records that Provident no longer possessed.

Lastly, Keam's contention that he was denied sufficient discovery is unpersuasive.  During the course of the litigation, Keam actively engaged in discovery.  His actions caused Provident to produce more than 800 documents and the district court partially granted two motions to compel answers to various discovery requests filed by Keam.  Furthermore, Keam does not illustrate, and it is not clear, how further discovery would  have helped resolve the issues at hand.  Keam "discovered" the documents needed to prove his claim.  The documents, however, contained no proof of wrongful conduct on the part of Provident.

B.  Keam's Title VII Claim.

The basis of Keam's Title VII claim is that Provident applied different disciplinary standards to non-Asian data entry clerks, *i.e.*, Jana Pierson (white) and Corey Robinson (black) in the BFI

7

group. The summary judgment evidence, however, does not comport with Keam's assertion. The record indicates that Pierson and Taylor, like Keam, initially failed to meet productivity goals and consequently were disciplined. The record also indicates that Keam, Pierson, and Robinson were counseled in the same manner because of their lack of production and that they were all told that failure to improve productivity could result in further disciplinary action. Unlike Keam, however, both Robinson and Pierson improved their productivity by meeting the claims-per-hour goal set by Provident making further disciplinary action unnecessary. Plainly stated, Keam's allegation that he was subject to disparate treatment because of his race is unsupported by the summary judgment evidence. As this court has stated, conclusory allegations, speculation, and unsubstantiated assertions are inadequate to survive a motion for summary judgment. *See, e.g., Forsyth v. Barr*, 19 F.3d 1527, 1531 (5th Cir. 1994). Accordingly, the judgment of the district court is AFFIRMED and the appellant's motion to expedite is denied as moot.